**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARCELA DIAZ, DENISE FUTCH,
MARK MICHAELSON, JOSEPH
NAPIER, ERIC PEHMOELLER,
and ROBERT WEAVER,

    Plaintiffs,

v.                                         Case No. 3:21-cv-413-TJC-SJH

MIAMI AIR INTERNATIONAL,
INC.,

    Defendant.

**O R D E R**

    This case is before the Court on cross-motions for summary judgment to decide whether Article 17(1) of the Montreal Convention permits passengers physically injured in a plane crash to recover for mental injuries unrelated to their physical injuries. The Court held a hearing on the cross-motions on September 16, 2024, the transcript of which is incorporated by reference. Doc. 235.

    Plaintiffs Marcela Diaz, Denise Futch, Mark Michaelson, Joseph Napier, Eric Pehmoeller, and Robert Weaver were passengers on a flight from Guantanamo Bay, Cuba, to Jacksonville, Florida, that ended with the plane veering off the runway during the landing, through a rock wall or berm, and

into the St. Johns River. See Doc. 1, 9, 21, 46. They sue the carrier, Defendant Miami Air International, Inc., for bodily injuries and mental anguish. Id. ¶ 52. Miami Air asserts as an affirmative defense that mental injuries independent of bodily injuries are not compensable under the Montreal Convention. Doc. 116 at 27. The parties now cross-move for summary judgment on that affirmative defense.[1]  Docs. 195, 203.

The Montreal Convention is an international flight treaty between more than 130 countries. See Convention for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 ("Montreal Convention"). It was designed to promote smooth air transportation, equitably balance stakeholder interests, protect consumers by providing for restitution, and "modernize and consolidate" its predecessor—the Warsaw Convention—which had evolved into a patchwork of amendments and extraneous agreements over the decades since its origin. Id. at preamble; see also Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776 at 779–81 (7th Cir. 2008) (describing history and background of the Warsaw and Montreal Conventions); Ehrlich v. Am. Airlines, Inc., 360 F.3d

---

[1] Miami Air moved for summary judgment on the passengers' ability to recover for mental injuries unrelated to their bodily injuries earlier in the case. Doc. 54. The Court denied the motion without prejudice because discovery was incomplete and whether the passengers would pursue damages for independent mental injuries had not been established. Doc. 82 at 26–28.

366, 370 (2d Cir. 2004) (describing Warsaw Convention and subsequent agreements). Relevant here is Article 17(1):

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The Warsaw Convention contained a substantially similar provision:

> The carrier is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Convention for the Unification of Certain Rules Relating to International Carriage by Air, Oct. 12, 1929, at art. 17 ("Warsaw Convention") (English translation of the official version, which is in French).

Montreal Convention delegates considered explicitly addressing damages for mental injuries but ultimately decided against doing so to avoid disturbing precedents under the Warsaw Convention:

> Article 17 defines conditions required for carrier liability for harm to passengers, including a death or bodily injury and an accident occurring within a defined time frame. At the International Conference on Air Law at which the Convention was adopted, delegates considered making express reference to recovery for mental injury, but instead resolved to leave untouched legal precedents developed under the language of the Warsaw Convention, acknowledging that such precedents currently allow the recovery of mental injury in certain situations and that the law in this area will continue to develop in the future.

Letter of Submittal of Strobe Talbott, S. Treaty Doc. No. 106-45, 1999 WL 33292734, at *7; see also id. at *16 (Statement by the Conference adopted in the Minutes); 1 International Civil Aviation Organization, Minutes, The International Conference on Air Law, Montreal, 10–28 May 1999, at 67–68, 70–74, 112–15, 141–42, 175–76 ("Montreal Convention Minutes") (describing various signatories' positions on Sweden and Norway's proposal to change "damage sustained in the case of death or bodily injury of a passenger" to "damage sustained in the case of death or bodily or mental injury of a passenger").

The United States entered the Montreal Convention with the understanding that Article 17(1) would "be construed consistently with the precedent developed under the Warsaw Convention" and that any damages for mental injuries would flow from bodily injuries. See the Talbott letter at *16 (Explanatory Note to Chapter III, Article 17: "Following extensive debate, the Conference decided not to include an express reference to recovery for mental injury, with the intention that the definition of 'bodily injury' would continue to evolve from judicial precedent developed under Article 17 of the Warsaw Convention, which uses that term." (Emphasis added.)). For more than two decades, courts have relied on precedent interpreting the Warsaw Convention to interpret portions of the Montreal Convention that are substantially similar. See, e.g., Jacob v. Korean Air Lines Co., 606 F. App'x 478, 480 n.2 (11th Cir.

4

2015) ("Courts interpreting the Montreal Convention may rely on authority concerning its predecessor, the Warsaw Convention, where provisions of both conventions are similar.").

With this history in mind, the Court turns to the meaning of Article 17(1). "The interpretation of a treaty, like the interpretation of a statute, begins with its text." Medellín v. Texas, 552 U.S. 491, 506 (2008). "Other general rules of interpretation may be brought to bear on difficult or ambiguous passages." E. Airlines, Inc. v. Floyd, 499 U.S. 530, 535 (1991) (quoted authority omitted). "Moreover, treaties are construed more liberally than private agreements, and to ascertain their meaning [a court] may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." Id. (cleaned up). "Respect is ordinarily due the reasonable views of the Executive Branch concerning the meaning of an international treaty." El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 168 (1999). And "[b]ecause a treaty ratified by the United States is 'an agreement among sovereign powers,' [courts] have also considered as 'aids to its interpretation' . . . 'the postratification understanding' of signatory nations." Medellín, 552 U.S. at 507 (quoting Zicherman v. Korean Air Lines Co., 516 U.S. 217, 226 (1996)). A court has a "responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties." Air France v. Saks, 470 U.S. 392, 399 (1985). Finally, "[w]henever possible,

interpretations of a treaty that produce anomalous or illogical results should be avoided." Ehrlich, 360 F.3d at 385 (citing El Al Israel Airlines, 525 U.S. at 171, and other cases); cf. Am. Tobacco Co. v. Patterson, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.").

The text of Article 17(1) is susceptible to three interpretations. "The carrier is liable for damage sustained in case of death or bodily injury of a passenger" could mean (1) that the carrier is liable for damage consisting of death or bodily injury,[2] (2) that the carrier is liable for damage consisting of or stemming from death or bodily injury, or (3) that the carrier is liable for any damage that occurs if death or bodily injury also occurs. The similar Warsaw Convention language—"[t]he carrier is liable for damages sustained in the event of the death or wounding . . . or any other bodily injury suffered by a passenger"—is susceptible to the same three interpretations.

Over the years, most courts have adopted the second interpretation. See, e.g., Jack v. Trans World Airlines, Inc., 854 F. Supp. 654, 668 (N.D. Cal. 1994) ("Plaintiffs with impact injuries may recover for their impact injuries and the emotional distress flowing only from the physical injuries. . . . Recovery is not allowed for the distress about the accident itself." (Warsaw Convention)); In re

---

[2] While this is a plausible reading of Article 17(a), the Court is unaware of any authority adopting it.

Air Crash at Little Rock Ark., on June 1, 1999, 291 F.3d 503, 510 (8th Cir. 2002) ("Lloyd") ("[D]amages for mental injury must proximately flow from physical injuries caused by the accident." (Warsaw Convention)); Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 368 (2d Cir. 2004) (passengers cannot recover under the Warsaw Convention "for mental injuries that accompany, but are not caused by, bodily injuries"); Bassam v. Am. Airlines, 287 F. App'x 309, 317 (5th Cir. 2008) (denying emotional distress damages with no physical injuries because "courts have held that emotional injuries are not recoverable under Article 17 of the Montreal Convention or Warsaw Convention unless they were caused by physical injuries"); Jacob, 606 F. App'x at 482 ("[A]t best, 'mental injuries are recoverable under Article 17 [of the Montreal Convention] only to the extent that they have been caused by bodily injuries.'" (quoting Ehrlich, 360 F.3d at 400)); Bandary v. Delta Air Lines, Inc., No. 17-1065, 2019 WL 9244788, at *1 (C.D. Cal. Oct. 11, 2019) ("Recovery can be had for 'damage sustained in case of death or bodily injury.' In this context, this means the damage suffered due to the death or bodily injury. Nothing in this language suggests that any bodily injury suffered in the course of an accident, no matter how slight, opens up recovery for all mental and emotional distress, no matter how unrelated to the bodily injury. This would lead to absurd results surely not intended by the drafters of Article 17.").

7

The Sixth Circuit diverged from this common interpretation in Doe v. Etihad Airways, P.J.S.C., 870 F.3d 406 (2017). There, the court held that the plain meaning of Article 17 permits recovery for all mental injuries as long as physical injury or death also arises from the same accident. Id. at 413–14. The court reasoned that "in case of" is conditional rather than causal language—so recovery for mental injury is conditioned on physical injury but the mental injury need not be caused by the physical injury—and rejected precedent from other circuits interpreting Article 17(1) of the Warsaw Convention, most notably Ehrlich.³ Id. at 413, 415.

---

³Despite emphasizing that "the Montreal Convention is a new treaty that we should interpret independently of the Warsaw Convention, such that Ehrlich [from the Second Circuit] does not inform our decision here," the Sixth Circuit acknowledged that "there is nonetheless evidence that the drafters of the Montreal Convention intended Article 17(1) to be construed consistently with well-settled Warsaw Convention precedents of the United States Supreme Court." Etihad, 870 F.3d at 419.

Ehrlich provides an in-depth textual analysis of the Warsaw Convention. See generally 360 F.3d 366. In Etihad, the Sixth Circuit asserts that the Second Circuit in Ehrlich "interpolated a causal component into the Warsaw Convention that was not required by the text, and . . . did so expressly to serve the Warsaw Convention's purpose" of limiting carrier liability. Etihad, 870 F.3d at 416. But the Second Circuit considered the Warsaw Convention's purpose as part of a broader inquiry into the signatories' understanding of Article 17. See generally 360 F.3d 366. The court "reviewed, inter alia, the text of the Warsaw Convention, the negotiations that led to the adoption of that treaty, the goals its provisions aim to address, French law, the opinions (judicial and otherwise) of our sister Convention signatories, and the meaning attributed to Article 17 of the Convention by our Executive Branch." Id. at 400. The court's conclusion "that a carrier may be held liable under Article 17 for mental injuries only if they are caused by bodily injuries" was explicitly based on its "exhaustive

8

The Northern District of Illinois has also concluded that damages for mental injuries unrelated to physical injuries are recoverable. See In re Aircrash Near Roselawn, Ind. on Oct. 31, 1994, 954 F. Supp. 175, 179 (N.D. Ill. 1997) (observing that Article 17 of the Warsaw Convention does not explicitly say "that passengers can only recover for mental injuries if they are caused by bodily injuries" and permitting plaintiffs to recover damages for the pre-death fear passengers had experienced); Oshana v. Aer Lingus Ltd., No. 20-C-2041, 2022 WL 138140, at *6–10 (N.D. Ill. Jan. 12, 2022) (agreeing with Etihad's analysis, particularly based on Etihad's differentiation of the purposes underlying the Warsaw and Montreal Conventions); Rivera v. Aerovias de Mexico, S.A. de C.V., 690 F. Supp. 906, 911 (N.D. Ill. Sept. 6, 2023) (relying on Oshana).

The parties have not cited—and the Court has not found—any authority that binds this Court on the issue. The Eleventh Circuit has adopted the second approach, but only in an unpublished opinion. See Jacob, 606 F. App'x 478. The Supreme Court has not addressed the issue directly but has explicitly held that a carrier is not liable for mental injuries under the Warsaw Convention where no death or physical injury occurs. Floyd, 499 U.S. at 552. The court

---

examination of these sources." Id.

9

"express[ed] no view as to whether passengers can recover for mental injuries that are accompanied by physical injuries."[4] Id.

This Court now joins the majority of courts in holding that Article 17(1) of the Montreal Convention establishes carrier liability for mental injuries only to the extent that the mental injuries flow from bodily injuries. This interpretation is supported by a natural reading of the text of Article 17(1) itself, the Montreal Convention's delegates' expressed intent to leave damages for mental injuries up to individual jurisdictions' understanding of "bodily injury"

---

[4] Lower courts have held that permitting damages for mental injuries unrelated to physical injuries violates the spirit of Floyd. E.g., Lloyd, 291 F.3d at 510 ("If the emotional damages 'flow from,' or are caused by, physical injuries, the physical injuries will not be fully compensated if we do not allow recovery for this aspect of the harm. However, allowing a physical injury, no matter how minor or unrelated, to trigger recovery of any and all post-crash mental injuries would violate both the letter and spirit of Floyd."); Ehrlich, 360 F.3d at 386 n.13 ("The [Supreme] Court's failure to comment on the need for a causal connection between mental and bodily injuries is easily explained. That issue was not presented in Floyd because no passengers alleged that they sustained a physical injury. Hence, we hold that permitting passengers to recover for mental injuries that were not caused by bodily injuries violates the spirit, rather than the letter, of Floyd." (cleaned up)); see also Longo v. Air France, No. 95-cv-292, 1996 WL 866124, at *2 (S.D.N.Y. July 25, 1996) ("Allegations of mental distress that is unrelated to physical injury . . . are no different from the pure mental injury claims proscribed by Floyd, and therefore must be dismissed."); Alvarez v. Am. Airlines, Inc., 1999 WL 691922, at *4 (S.D.N.Y. Sept. 7, 1999) (if damages for mental injuries unrelated to physical injuries were permitted, "plaintiffs would be able to skirt Floyd's bar on recovery for purely psychological injuries simply by alleging that they have suffered some physical injury, no matter how slight or remote," and "[a]s a practical matter, the substantive rule of law announced in Floyd would thus be converted into an easily satisfied pleading formality, and a back door would be impermissibly opened to recovery for purely psychological injuries").

(rejecting the effort to include language providing that mental injuries independent of bodily injuries are compensable), the United States Senate's understanding upon ratification that Article 17(1) would be construed consistently with Warsaw Convention precedent, the majority of both Warsaw Convention and Montreal Convention caselaw precluding carrier liability for mental injuries unrelated to physical injuries, and the illogic of reading Article 17(1) to permit damages for mental injury for a passenger who suffers a small scratch but no damages for the unscratched but equally traumatized passenger beside him.

Relying heavily on Etihad, the passengers raise two plain-language arguments: First, they argue that the language "in case of" is not causal and could be replaced with "in the event of," "when," or "if there is." See generally Docs. 195, 204, 218, 235. In their view, such a replacement excludes any requirement of a link between "damage sustained" and "death or bodily injury." Second, they argue that the language "upon condition only" means that the sole condition for liability is the accident taking place on the aircraft or while boarding or deboarding, and thus bodily injury causing mental injury cannot be a condition for liability for the mental injury.[5] See id. The passengers also argue

---

[5] At the summary judgment motion hearing, the passengers also asked the Court to focus on the language changes between the Warsaw and Montreal Conventions and consider how those changes affect the persuasiveness of Ehrlich. Doc. 235 at 37:22–23. The Court has considered the changes but

11

that the Montreal Convention is "pro-passenger" and therefore should be construed to favor recovery. See id.

The passengers' plain-language arguments are based on narrow analysis of specific words instead of the plain language of the entirety of Article 17(1) and, in any case, ignore common understandings of some of the specific words. To start, "in case of" bespeaks connection. In Article 17(1), "in case of" connects "damage sustained" to "death or bodily injury." The significance of the connection is clear: Establishing death or bodily injury as the basis for liability makes no sense if damage wholly unrelated to death or bodily injury is intended to be compensable.

Replacing "in the case of" with "when" (or the passengers' other proposed replacements) does not change the connection between "damage sustained" and "death or bodily injury." A normal reading of "the carrier is liable for damage sustained when death or bodily injury of a passenger occurs" connotes that the damage sustained relates to the death or bodily injury. Reading it to mean "the carrier is liable for any damage a passenger sustains if the passenger is killed or physically injured, even if the damage is unrelated to the passenger's death or physical injury" strains the text and rests on the assumption that the Montreal Convention signatories intended to open the door not only to damages

---

disagrees with the passengers' reading of Ehrlich and rejects the passengers' argument.

for mental injuries unrelated to physical injuries, as the passengers here suggest, but to <u>all</u> potential damages. For example, the cost of delay—perhaps a lost business opportunity—could be compensable for a passenger with a slight bruise but not his travel companion. The legislative history of the Montreal Convention, described above, demonstrates that the signatories intended no such outcome.

As for "upon condition only," that language limits the circumstances in which an accident will give rise to liability. It does not address the type of damages for which a carrier is liable.[6]

The argument that Article 17(1) should be construed to favor liability for independent mental injuries because the Montreal Convention is "pro-passenger" is unpersuasive. As stated directly in the preamble, the Montreal Convention serves many purposes, including "achieving an <u>equitable</u> <u>balance</u> of interests." (Emphasis added.) Not only does Article 17(1) itself limit carrier liability to specific circumstances, but Article 21 limits amounts recoverable.

---

[6]At the hearing, the passengers urged the Court to apply a textualist analysis. Doc. 235 at 23:17–22, 29:23–30:2, 41:13. The Court has done so. The passengers' textualist focus is on the meaning of individual words and phrases, divorced from context, rather than the meaning of those words and phrases as used with other words and phrases in Article 17(1). <u>See</u> <u>generally</u> <u>id.</u>; Docs. 195, 204, 218. To adopt their interpretation would require abandoning a commonsense reading of Article 17(1) in favor of a pedantically possible reading, all the while ignoring the stated intent of the signatories to the Montreal Convention. <u>See</u> <u>supra</u> pp. 2–4.

The negotiations and drafting history, discussed above, also show that delegates intended to balance the interests of passengers and carriers alike.[7] See supra p. 2; see also Montreal Convention Minutes at 46–51. Preferring passengers' interests over carriers' would require ignoring an explicit purpose of the Montreal Convention. At any rate, construing Article 17(1) to permit recovery for some passengers and deny it to others suffering the exact same harm is hardly "pro-passenger." See, e.g., Jack, 854 F. Supp. at 668 ("[Limiting recovery for mental injuries to those flowing from physical injuries] prevents great inequities among passengers . . . . The happenstance of getting scratched on the way down the evacuation slide does not enable one passenger to obtain a substantially greater recovery than that of an unscratched co-passenger who was equally terrified by the plane crash. Passengers' recoveries are more reasonable and predictable, as desired by the drafters[.]"); Bandary, 2019 WL 9244788, at *1 (quoted supra p. 6).

---

[7]Other courts have rejected the argument that the Montreal Convention favors consumers' interests over airlines' interests. See, e.g., Bassam, 287 F. App'x at 312 ("Even though the Montreal Convention is directed more at consumers [than the Warsaw Convention], it does not alter the original goal of the Warsaw Convention of maintaining limited and predictable damage amounts for airlines."); Sompo, 522 F.3d at 781 ("[The Montreal] Convention seems to have reversed one of the premises of the original Warsaw Convention, which favored the airlines at the expense of consumers. Nevertheless, the Montreal Convention did not alter the original Warsaw Convention goal of maintaining limited and predictable damage amounts for airlines." (internal citation omitted)).

Applying the limits of Article 17(1) to this case, Miami Air is entitled to partial summary judgment. As a matter of law, under the Montreal Convention, damages for mental injuries that do not stem from bodily injuries are not recoverable.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment, Doc. 195, is **DENIED**.

2. Defendant's Motion for Partial Summary Judgment Barring Recovery of Certain Mental Injury Damages under the Montreal Convention, Doc. 203, is **GRANTED**.

3. The Court defers ruling on the pending Daubert motions. As soon as possible, but no later than **January 15, 2025,** the parties must mediate. Promptly after mediation, they must inform the Court of the outcome. If mediation is unsuccessful, the Court will set an omnibus Daubert hearing, rule on the pending Daubert motions, and set the case for trial.

**DONE AND ORDERED** in Jacksonville, Florida, the 1st day of November, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

vng

Copies to:

Counsel of record